IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION: DAYTON

| | |
|---|---|
| STATE OF OHIO, and<br><br>FRANK LAROSE, in his official capacity as OHIO SECRETARY OF STATE,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and<br><br>ALEJANDRO MAYORKAS, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>       *Defendants*. | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

The State of Ohio and Ohio Secretary of State Frank LaRose, acting in his official capacity, ("Plaintiffs"), by undersigned counsel, allege as follows:

**NATURE OF THE CASE**

1. Federal law dictates that the privilege of participating in U.S. elections is reserved for U.S. citizens, and it is a crime for non-citizens to register to vote or to vote in federal elections. 18 U.S.C. §§ 611, 1015(d). The Ohio Constitution provides that "[o]nly a citizen of the United States" shall be permitted to vote at any State or local election held in the State. OH Const. art. 5, § 1.

1

2. The State of Ohio "indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021). As Ohio Secretary of State, Frank LaRose is charged with enforcing federal and State election laws in Ohio. Ohio Rev. Code § 3501.05. Secretary LaRose's federal- and State-law duties include maintaining an accurate legal voter registration database to ensure that every citizen has the right and opportunity to vote. *See, e.g.*, 52 U.S.C. § 21083(a)(1)–(5); Ohio Rev. Code § 3501.04. His office also responds to county boards of elections' requests for verification of individual registered voters' citizenship.

3. Congress provided a means to fulfill these duties by expressly compelling the Department of Homeland Security ("DHS") to comply with State requests to verify the immigration and citizenship status of any individual. Specifically, DHS *"shall respond* to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, *by providing the requested verification or status information."* 8 U.S.C. § 1373(c) (emphases added). The statute refers to the Immigration and Naturalization Service ("INS"), but Congress transferred those duties to DHS. 6 U.S.C. § 202(3).

4. This obligation is so important and nondiscretionary that Congress also expressly *outlawed* any interference—even by other federal officials—with the prompt provision of immigration information to State officials: "a Federal, State, or

local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

5. And yet *another* statute emphasizes this obligation's unyielding nature: "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.

6. The U.S. Supreme Court has repeatedly held that these provisions "*require*[] the Federal Government to 'verify or ascertain' an individual's 'citizenship or immigration status' in response to a state request." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 602 (2011) (emphasis added); *Arizona v. United States*, 567 U.S. 387, 412 (2012) ("Congress has obligated [DHS] to respond to any request made by state officials for verification of a person's citizenship or immigration status.").

7. Secretary LaRose has repeatedly invoked the statutory right for DHS to make available to Secretary LaRose information allowing him to confirm the citizenship status of certain registered Ohio voters to confirm their eligibility to participate in federal elections.

8. Ohio has access to DHS's Systematic Alien Verification for Entitlements ("SAVE") program, but SAVE is insufficient for verifying citizenship status for most voters because SAVE does not contain driver's license or social security identification

3

numbers. The only way to identify someone in SAVE is to have one of a handful of specific immigration identification numbers (like an Alien Registration Number) that States like Ohio rarely possess. *See* DHS, *Tutorial: Introduction to SAVE and the Verification Process for SAVE Users* (Mar. 2024), https://perma.cc/N62J-ESFF.

9. At this time, it is known to the Secretary of State's office that there are individuals who have registered to vote in Ohio despite previously telling the Ohio Bureau of Motor Vehicles that they are not U.S. citizens, and whose citizenship status cannot be confirmed via the SAVE program. Many of those individuals may have become citizens in the meantime, but Ohio is simply unable to confirm one way or the other.

10. Accordingly, on July 19, 2024, Secretary LaRose submitted a request to Secretary of Homeland Security Alejandro Mayorkas for access to federal databases and search tools, including the Person Centric Query Service ("PCQS"), to ensure that Ohio could verify the citizenship of specific registered voters whose citizenship may be the subject of dispute. Exhibit 1. PCQS draws from a much broader array of identification information, making it far easier for State officials to confirm citizenship status without having to use one of those unique immigration identifiers that States rarely possess.

11. Secretary LaRose asked DHS to respond with its "intention to comply with this request or any objection to it by July 26, 2024, given the imminence of the integrity of the upcoming election." *Id.* at 3.

4

12. But July 26, 2024, came and went with no response, so Secretary LaRose's office again contacted DHS on July 30, 2024, to follow up on its request. Exhibit 2, at 6–7. After another month of silence, Secretary LaRose's office contacted DHS for a third time on August 29, 2024. *Id.* at 5–6. This request expanded the original request to include access to the Central Index System 2 (CIS2) and the Person Centric Identity Services (PCIS), as well as any other system or data that can assist with verifying citizenship status. Still, DHS gave no response.

13. A fourth request by Ohio on September 11, 2024, *id.* at 3–4, finally elicited an acknowledgement from DHS—an email stating that the original request had been received and transferred "as a courtesy" to another office within DHS's vast bureaucracy "for response," and DHS identified yet another DHS office that Secretary LaRose should send Ohio's request to "for the most direct and timely response," *id.* at 3.

14. Secretary LaRose's office resubmitted its request less than an hour after receiving DHS's email. This request asked for a response by September 13, 2024. *Id.* at 1–2. No response came by that date.

15. On September 27, 2024, Representative Jim Jordan, who is a Congressman from Ohio and Chairman of the House of Representatives Committee on the Judiciary, sent a letter to Secretary Mayorkas requesting information about why DHS had not responded to any of Secretary LaRose's requests. Exhibit 3.

16. On October 10, 2024, nearly three months after first requesting assistance, Secretary LaRose received a response from DHS. The letter claimed that

5

Ohio's access to the SAVE program was sufficient—despite Ohio's previous letters explaining why SAVE is largely useless here because Ohio lacks the identifiers needed to find specific individuals in SAVE. Exhibit 4.

17. Despite its statutory duty to provide citizenship information, DHS said it would not "offer an alternative process to any state," ostensibly because "PCQS would require manual review of the results in each case" to resolve any "disparate or conflicting results" that a search returned. *Id.* at 2. Yet the Secretary of State is willing to undertake such additional burdens, if necessary.

18. On October 14, 2024, Ohio, through its Attorney General and joined by 15 other State Attorneys General, sent a letter to Secretary Mayorkas, *see* Exhibit 5, expressing concern about the "delayed and inadequate responses" that DHS gave to requests for assistance and "urg[ing]" DHS "to faithfully execute [its] duty to verify voter registration information to the States," *id.* at 2–3. The State Attorneys General requested that DHS "provide [them] with [DHS's] plan to provide an adequate response to the States' outstanding requests for verification of flagged, individual voter registrants" within three business days of receiving the letter. *Id.* at 3.

19. To date, to the best of the Secretary's knowledge, DHS has not responded.

20. By declining to provide citizenship status upon request—and by further stating it will refuse to provide access to databases like PCQS—DHS is violating its nondiscretionary statutory obligation to "respond to an inquiry" by a State agency "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

6

21. As a result, Ohio and Secretary LaRose remain unable to verify citizenship and to respond to all requests by local officials to confirm citizenship status of specific individuals registered to vote, in compliance with federal law. 18 U.S.C. § 611.

22. By ignoring these requests for months, DHS has left Plaintiffs with no choice but to sue to obtain the information that Congress long ago mandated DHS to provide.

23. The Court should grant an injunction and/or writ of mandamus ordering Defendants (1) immediately to provide Plaintiffs access to the information to which they are entitled under 8 U.S.C. § 1373, and (2) to cease and refrain from interfering with the production of that information, *see* 8 U.S.C. § 1373(a).

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, 1361, 2201, and 2202, as well as 5 U.S.C. §§ 702, 705, and 706(1). The claims asserted herein arise under and are pursuant to 8 U.S.C. §§ 1373 and 1644.

25. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(e)(1) because Ohio resides in every district within its borders, *see, e.g.*, *Holmseth v. Goddard*, No. 2:23-cv-11, 2023 WL 5519714, at *5 (E.D. Tenn. Aug. 25, 2023) (citing *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018)), and there is no real property involved in the action.

## THE PARTIES

26. Plaintiff the State of Ohio "indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich*, 594 U.S. at 685 (internal quotations omitted). Ohio has both a sovereign duty and a federal statutory obligation to protect the franchise. *See* 52 U.S.C. § 21083(a)(1)–(5).

27. Plaintiff Frank LaRose is acting in his official capacity as the Ohio Secretary of State. He is "the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed" in Ohio law. Ohio Rev. Code § 3501.04. Ohio law makes the Secretary of State responsible for "[c]ompel[ling] observance by election officers … of the requirements of the election laws." Ohio Rev. Code § 3501.05(M).

28. Defendant the U.S. Department of Homeland Security is the federal agency responsible for working with State and local governments to ensure the security and integrity of federal elections. *See, e.g.*, 8 U.S.C. §§ 1373, 1644; DHS, *Election Security*, https://perma.cc/MXQ8-RME2 (visited Oct. 10, 2024).

29. Defendant Alejandro Mayorkas is Secretary of the U.S. Department of Homeland Security, which is responsible for providing State and local governments with information to ensure the security and integrity of federal elections. *See, e.g.*, 8 U.S.C. §§ 1373, 1644; DHS, *Election Security*, *supra*. He is sued solely in his official capacity.

## BACKGROUND

**A. Federal Law Prohibits Non-Citizens from Voting in Federal Elections—and Mandates DHS to Respond to States' Inquiries Regarding Citizenship Status.**

30. It is "unlawful for any alien to vote in any [federal] election." 18 U.S.C. § 611(a). This means that lawful permanent residents and illegal aliens may not legally vote in federal elections. *E.g.*, U.S. Citizenship & Immigr. Servs. ("USCIS"), *Rights and Responsibilities of a Green Card Holder (Permanent Resident)*, https://perma.cc/7QVA-4HHL (visited Oct. 19, 2024).

31. Congress created a mandatory duty for Defendants to respond to State requests for immigration and citizenship status. As explained above, DHS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644.

32. Congress went even further by dictating that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

**B. Ohio Is Entitled to Access to Citizenship Information.**

33. On July 19, July 30, August 29, and September 11, 2024, Secretary LaRose invoked his statutory right to obtain access to citizenship information to

ensure the eligibility of Ohio registered voters. Exhibits 1, 2. On October 14, 2024, Ohio's Attorney General likewise sought access to such information on behalf of the State. *See* Exhibit 5.

34. Plaintiffs thus seek access to "citizenship" information for "any purpose authorized by law," triggering Defendants' statutory obligations to "respond … by providing the requested verification or status information" and to avoid "in any way restrict[ing]" Plaintiffs' "recei[pt]" of "such information." 8 U.S.C. § 1373.

35. DHS's October 10, 2024, letter refusing to do so is conclusive evidence that Defendants are violating—and intend to continue violating—their obligations under 8 U.S.C. § 1373.

36. DHS claims that Ohio's access to the SAVE program is sufficient, Exhibit 4, but Ohio's letters have already explained that SAVE access rarely provides the information needed, Exhibits 1, 2, 5. SAVE was not designed to implement 8 U.S.C. § 1373's mandate that DHS provide State governments with requested citizenship information for any lawful purpose. 76 Fed. Reg. 58,525, 58,526 (Sept. 21, 2011). Rather, SAVE "is a fee-based intergovernmental initiative" that was "designed to assist benefit-granting Federal, state, tribal, and local government agencies [to] determine if non-U.S. citizen applicants are entitled to receive … public benefits." *Id.* at 58,526–27.

37. Most importantly, SAVE requires a unique immigration identifier, such as an Alien Registration Number, but Plaintiffs rarely have access to these identifiers, which are not typically included on federal election voter registration

10

forms. USCIS, *About SAVE–Verification Process*, https://perma.cc/ATX6-4X2X (visited Oct. 17, 2024); DHS, *Tutorial: Introduction to SAVE, supra.*

38. SAVE does not allow searching based on name, date of birth, and the last four digits of a social security number, which are identifiers that the State is likely to possess.

39. The Ohio Secretary of State's office has also found that, even when a unique immigration identifier is available, SAVE is sometimes inconclusive because individuals' naturalization records are not always linked to the SAVE system.

40. These limitations leave Plaintiffs unable to confirm that certain individuals are actually citizens, as required by federal law to register to vote—inquiries that have arisen and are likely to continue arising as the election nears and in future elections.

41. At this time, there are individuals who have registered to vote in Ohio despite previously telling the Ohio Bureau of Motor Vehicles that they are not U.S. citizens, and whose citizenship status cannot be confirmed via the SAVE program.

42. To resolve these situations where a registered voter's citizenship can be neither proven nor disproven with available documentation, Ohio requested that DHS grant it access to PCQS, which can determine a person's citizenship by searching multiple USCIS information systems and databases using search terms like name, date of birth, and social security number—information that Ohio typically has for individuals whose citizenship status may be disputed for voter-registration purposes. *See* DHS, DHS/USCIS/PIA-010(a), *Privacy Impact Assessment Update for*

*the Person Centric Query Service* (Apr. 6, 2018), https://perma.cc/N6Z5-5D2Z; Exhibit 1, at 2. This request was eventually expanded to include access to the CIS2 and PCIS, as well as any other system or data that can assist with verifying citizenship status.

43. But Defendants have refused access to PCQS, claiming it "is not an option for state and local agencies to use for voter verification purposes" because it "would require manual review of the results in each case to determine immigration status, as the systems may return disparate or conflicting results." Exhibit 4.

44. The potential need for manual review, however, does not excuse DHS from its unflagging statutory obligation to "respond" to Ohio's requests for verification of individuals' "citizenship or immigration status … by providing the requested verification." 8 U.S.C. § 1373(c).

45. Although Defendants have this nondiscretionary obligation to provide Plaintiffs with citizenship information, Defendants have now formally refused to do so. Exhibit 4.

## CLAIMS

### COUNT 1: AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED (VIOLATION OF 8 U.S.C. §§ 1373, 1644)

**(Injunctive Relief)**

46. Plaintiffs reallege each and every allegation above as if fully set forth herein.

47. Congress has given this Court jurisdiction over federal questions under 28 U.S.C. § 1331, as well as agencies' refusal to act or unreasonable delay in acting in accordance with law under 5 U.S.C. §§ 702, 705, and 706(1).

48. This Court has authority to issue affirmative injunctions to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

49. Defendant the Department of Homeland Security is a federal government agency. 5 U.S.C. § 701(b).

50. Defendants have an unwavering statutory obligation under 8 U.S.C. §§ 1373 and 1644 to provide citizenship information, but they have formally refused to do so. That qualifies as agency action unlawfully withheld or unreasonably delayed.

51. Plaintiffs satisfy the requirements for both a preliminary and a permanent injunction. The preliminary injunction standard asks: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (internal quotations omitted). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

52. On the first element, as explained above, Plaintiffs are certain to prevail on the merits of this claim, as Defendants have an unwavering statutory obligation to provide citizenship information, but they have formally refused to do so. Plaintiffs

thus meet the first element of the standards for both a permanent and preliminary injunction. The remaining elements are the same for both types of relief. *Id.*

53. On the second element, Plaintiffs have a compelling interest in election integrity, and the prospect of non-citizens voting in the federal election presents an irreparable harm. *See Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004).

54. That harm is also imminent because the upcoming federal election is less than two weeks away. Even after election day, this information is needed to verify that only citizens voted in the election and to generally ensure the integrity of Ohio's elections. Defendants' months-long delay has unfortunately—and unnecessarily—yielded this problem. If DHS had followed its statutory obligation or made clear months ago that it would refuse to do so, Plaintiffs would not have been placed in this untenable situation.

55. When the federal government is the defendant, elements three and four merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). There is no harm to anyone—governmental or private—by compelling disclosure of citizenship statuses to Plaintiffs pursuant to a federal statutory obligation, and the public has a strong interest in seeing that the federal government follows the law. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765–66 (2021).

**COUNT 2: WRIT OF MANDAMUS (VIOLATION OF 8 U.S.C. §§ 1373, 1644)**

56. Plaintiffs reallege each and every allegation above as if fully set forth herein.

57. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Given the mandatory and unwavering language of 8 U.S.C. §§ 1373 and 1644, as confirmed by Supreme Court precedent, Defendants owe "a duty to the [P]laintiff[s]" to respond to their requests "by providing the requested verification or status information." Defendants' failure to do so is unlawful, and this Court is expressly empowered to "compel" them to comply with their statutory obligations.

58. Plaintiffs have also "exhausted all other avenues of relief," because DHS has refused to provide access to the information they seek, and no regime exists for appealing refusals or denials—presumably because Congress made pellucidly clear that Defendants have a nondiscretionary duty to comply with Plaintiffs' requests. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Further, USCIS controls access to PCQS. *See* DHS, *Privacy Impact Assessment Update*, *supra*. Plaintiffs are accordingly entitled to mandamus relief.

### COUNT 3: AGENCY ACTION NOT IN ACCORDANCE WITH LAW AND IN EXCESS OF AUTHORITY

59. Plaintiffs reallege each and every allegation above as if fully set forth herein.

60. Under the Administrative Procedure Act, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

61. Defendants' decision to use only the SAVE program to respond to inquiries under 8 U.S.C. §§ 1373(c) and 1644—even though they possess additional information not available through that program—is contrary to their statutory obligations.

62. Section 1373(c) requires Defendants to "*respond* to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual … *by providing the requested verification or status information*." 8 U.S.C. § 1373(c) (emphases added); *see also id.* § 1373(a) (forbidding federal entities and officials to "prohibit, or in any way restrict" States from "receiving" "information regarding the citizenship … status … of any individual"); *id.* § 1644 (prohibiting any restrictions on communication between State/local governments and DHS regarding immigration status of aliens).

63. These requirements apply to Plaintiffs' requests to verify immigration or citizenship status of a person even when they cannot verify through the SAVE program, and even when using the PCQS program or other systems discussed above would require manual verifications or other work.

64. Defendants' decision to limit their responses to inquiries that can be made via the SAVE program violates 8 U.S.C. § 1373(c) and is therefore "not in accordance with law," 5 U.S.C. § 706(2)(A).

16

## COUNT 4: DECLARATORY JUDGMENT

65. Plaintiffs reallege each and every allegation above as if fully set forth herein.

66. Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

67. Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also id.* § 1644.

68. When a State office requests verification of an individual's citizenship or immigration status because it cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty under 8 U.S.C. § 1373(c) to "respond" to that inquiry "by providing the requested verification or status information" in some other way. There is no exception just because the response may require Defendants to provide access to a different search tool or because it would require additional confirmation steps.

69. Plaintiffs are entitled to a declaration that Defendants have violated their statutory obligations and that Defendants must "respond" to Plaintiffs' inquiries "by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see id.* § 1644.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court provide the following relief:

A. An order holding unlawful Defendants' failure to provide Plaintiffs with access to confirm the citizenship of individuals for a purpose authorized by law, 8 U.S.C. § 1373(c); *id.* § 1644;

B. A declaration that Plaintiffs are entitled to a response to their inquiries under 8 U.S.C. § 1373(c); *id.* § 1644;

C. Preliminary and permanent injunctive relief compelling Defendants immediately and continuingly to provide citizenship status of Ohio voters requested by Plaintiffs, including if needed by providing access to PCQS, CIS2, and/or PCIS;

D. A writ of mandamus compelling Defendants immediately to provide citizenship status of Ohio voters requested by Plaintiffs, including if needed by providing access to PCQS, CIS2, and/or PCIS;

E. An award of costs, attorneys' fees, and other expenses, including pursuant to 28 U.S.C. § 2412(d)(1)(A) because Defendants were not substantially justified in refusing to comply with their nondiscretionary statutory duty; and

F. Any other relief as the Court deems just and proper.

Dated: October 24, 2024                Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER (*pro hac vice* forthcoming)

/s/ Nicholas A. Cordova
NICHOLAS A. CORDOVA (0100969)
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900
Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com
ncordova@boydengray.com

*Counsel for Plaintiffs*